LOMARCH CORP., A NEW JERSEY CORPORATION, PLAIN-
TIFF-RESPONDENT, v. MAYOR AND COMMON COUNCIL
OF THE CITY OF ENGLEWOOD IN THE COUNTY OF
BERGEN, STATE OF NEW JERSEY, DEFENDANT-AP-
PELLANT.

Argued December 4, 1967—Decided January 22, 1968.

Mr. *Herbert A. Chary* for respondent (*Messrs. Chary and Porcoro*, attorneys).

Mr. *William V. Breslin* for appellant.

Mr. *Fred G. Stickel*, III argued the cause for The New Jersey Institute of Municipal Attorneys and The New Jersey Federation of Official Planning Boards, *amici curiae* (*Messrs. Sachar, Sachar & Bernstein*, attorneys for The New Jersey Federation of Official Planning Boards; Mr. *John H. Dorsey*, on the brief).

The opinion of the court was delivered by

HANEMAN, J. This action in lieu of prerogative writs tests the constitutionality of *N. J. S. A.* 40:55–1.32 and *N. J. S. A.* 40:55–1.38, a part of what is commonly known as the Official Map Act, as well as an ordinance adopted by the Common Council of Englewood pursuant thereto. The Law Division found the Act unconstitutional and the defendant appealed to the Appellate Division. While pending there we certified the case on motion of both parties. *R. R.* 1:10–1A.

In April of 1967, plaintiff, who was and is the owner of some sixteen acres situate in Englewood, applied for approval of its plans to subdivide the property in order to construct single family dwellings. While consideration of the application was pending, the Common Council of Englewood adopted what is Ordinance No. 1724 pursuant to *N. J. S. A.* 40:55–1.32 and *N. J. S. A.* 40:55–1.34 which placed the land on the Official Map of the City and designated it land reserved for use as a park.

. *N. J. S. A.* 40:55–1.32 provides that a municipality may designate land uses upon an official map and that

"* * * Upon the application for approval of a plat, the municipality may reserve for future public use the location and extent of public parks and playgrounds shown on the official map, or any part thereof and within the area of said plat for a period of one year after the approval of the final plat or within such further time as agreed to by the applying party. Unless within such one year period or extension thereof the municipality shall have entered into a contract to purchase, or instituted condemnation proceedings, for said park or playground according to law, such applying party shall not be bound to observe the reservation of such public parks or playgrounds. During such period of one year or any extension thereof the applicant for the plat approval, and his assigns and successors in interest, may use the area so reserved for any purpose other than the location of buildings or improvements thereon, except as provided in [*N. J. S. A.* 40:55–1.38]."

Read in connection with *N. J. S. A.* 40:55–1.32, the practical effect of the ordinance was to "freeze", for a one year period, any attempt to develop the designated land.

On May 23, 1967 plaintiff's subdivision plan was granted initial approval. At the same time plaintiff was notified by letter that the land in question had been reserved for park land acquisition. Subsequently, the resolution granting final approval provided

"The approval granted by this Resolution does not in any way obligate the City of Englewood, and the applicant is acting solely at its own peril since the applicant is on notice that this property has been reserved by the City of Englewood on the official map under the Green Acres Program and the applicable Statutes of the State of New Jersey."

Eight days before final approval was granted, plaintiff brought this suit to challenge the statutory authority by which it had been denied the right to develop its lands for a period of one year. Such a denial it argues constitutes a taking of property without compensation as the statute makes no provision for payment and therefore violates both the Fourteenth Amendment to the Federal Constitution and *Art.*

I, ¶ 20 of the State Constitution. The defendant denies that the statute violates the constitutional prohibitions and further argues that plaintiff is prevented from bringing the suit, since it has not availed itself of the relief provisions of the Act (*N. J. S. A.* 40:55–1.38) which provides:

"For the purpose of preserving the integrity of the official map of a municipality, no permit shall be issued for any building in the bed of any street or drainage right of way shown on the official map, or on a plat filed pursuant to the Municipal Planning Act (1953) before adoption of the official map, except as herein provided. Whenever one or more parcels of land upon which is located the bed of such a mapped street or drainage right of way, or any park or playground location reserved pursuant to [*N. J. S. A.* 40:55–1.32] hereof, cannot yield a reasonable return to the owner unless a building permit be granted, the board of adjustment, in any municipality which has established such a board, may, in a specific case by the vote of a majority of its members, grant a permit for a building in the bed of such mapped street or drainage right of way or within such reserved location of a public park or playground, which will as little as practicable increase the cost of opening such street, or tend to cause a minimum change of the official map, and the board shall impose reasonable requirements as a condition of granting the permit so as to promote the health, morals, safety and general welfare of the public and shall, inure to the benefit of the municipality. In any municipality in which there is no board of adjustment, the governing body shall have the same powers and be subject to the same restrictions as provided in this section."

Plaintiff's answer is that this provision is inadequate and cannot serve to save the statutory scheme. We agree that the above provision pays but token service to the landowner's right to use his land and is of little practical value.

We come to the constitutional argument. In *WHYY, Inc. v. Glassboro*, 50 *N. J.* 6 (1967) this Court said at *p.* 13:

"* * * there is a strong presumption that a statute is constitutional, *In re Village of Loch Arbour*, 25 *N. J.* 258, 264–265 (1957), and a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. *Gangemi v. Berry*, 25 *N. J.* 1, 10 (1957). 'To declare a statute unconstitutional is a judicial power to be delicately exercised.' *Wilentz v. Hendrickson*, 133 *N. J. Eq.* 447, 487 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). * * *"

■ In construing a statute the presumption is that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner. *Jardine v. Borough of Rumson,* 30 *N. J. Super.* 509 (*App. Div.* 1954). Thus, it follows, in light of our decision in *Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp.,* 40 *N. J.* 539 (1963), that the legislature understood that any attempt to deprive a landowner of the use of his property for one year would be unconstitutional absent an intent to compensate the landowner.

■ The question now becomes whether that intent need be explicitly set forth in the statutory language. A statute often speaks as plainly by inference as by express words. *Juzek v. Hackensack Water Co.,* 48 *N. J.* 302 (1966). The details for the accomplishment of a statutory objective do not have to be specifically spelled out with particularity. It is not always essential in order to avoid unconstitutionality that provisions to insure compliance with the Federal or State constitution be spelled out in detail. Whenever the legislature authorizes municipal action which, if taken, would require, under the Constitution, that just compensation be paid, it follows that if the municipality wishes to exercise that power it must comply with the constitutional mandate and pay. The statute is not constitutionally defective for failure to expressly provide for compensation.

Consonant with the foregoing, we conclude that the "option" for the purchase of land upon the unilateral action of the municipality without any consensual action of the landowner, was statutorily granted to the municipality only upon the implied duty and obligation to make payment of adequate compensation to the landowner for the temporary taking and his deprivation of use.

■ Although the question is not formally before us, in anticipation of further proceedings concerning the establishment of reasonable compensation to plaintiff for this taking and for future guidance of the parties, we suggest that fair compensation would be attained in the following manner:

The landowner should receive the value of an "option" to purchase the land for the year. The "option" price should, among other features, reflect the amount of taxes accruing during the "option" period. This sum can be established by expert advice and opinion. If the municipality decides to purchase the lands, he shall be compensated, not only for the value of the land, but for reasonable amount of engineering expenses necessarily incurred in connection with obtaining municipal approval of the plat. If the municipality does not eventually take title no compensation shall be made for such expenses as the landowner has the continued benefit thereof.

Judgment reversed. Costs to plaintiff.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For affirmance*—None.