117 N.J. Super. 418 (1971)
285 A.2d 48
JERSEY CITY REDEVELOPMENT AGENCY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BANCROFT REALTY CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1971.
Decided December 9, 1971.
*420 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Joel I. Bergman argued the cause for appellant (Messrs. Krieger, Chodash and Politan, attorneys; Messrs. Joel I. Bergman and Kenneth P. Keller, on the brief).
Mr. William L. Handler argued the cause for respondent (Messrs. George R. and William L. Handler, attorneys).
The opinion of the court was delivered by MINTZ, J.A.D.
Plaintiff appeals from that portion of the final judgment following a jury verdict which ordered that the claim of the City of Jersey City for taxes and interest thereon due and owing from 1965 to 1968 shall not be a lien upon the judgment and condemnation award and that the condemnation award be paid to defendant property owner without making such deductions.
Defendant Bancroft Realty Co., Inc., (Bancroft) was the owner of a five-story brick tenement house situate at 185 Ninth Street in Jersey City (city), which it acquired in 1951 or 1952. On February 2, 1960 the city, pursuant to statutory authority, by resolution declared certain property, including defendant's premises, blighted. The blighted area is known as the Henderson Street Urban Renewal Project.
*421 In 1967 the Legislature by L. 1967, c. 217 and c. 218, amended the Blighted Area Act, subsection 21.10 (N.J.S.A. 40:55-21.10), and the Eminent Domain Act, subsection 9 (N.J.S.A. 20:1-9), with respect to compensation to be paid when property is acquired in eminent domain proceedings in connection with the development or redevelopment of a blighted area. Both statutes, as amended, now provide that in such cases "the value of any property sought to be acquired shall be fixed and determined to be no less than the value as of the date of the declaration of blight by the governing body * * *." The constitutionality of these 1967 amendments was adjudicated in Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 (1971).
The commissioners appointed to appraise Bancroft's property filed their report on April 1, 1969. The respective parties cross-appealed from said award. On December 13, 1969 plaintiff filed its complaint and declaration of taking. A jury trial as to the value of the premises was held in September 1970, resulting in a judgment valuing the premises at $23,500. The jury, in answer to a special interrogatory, found that the ability of the property to produce rental income was substantially impaired in 1965 by the declaration of blight and the delay of plaintiff in taking the property. The trial judge then entered the judgment abating the taxes thereon from 1965 to 1968.
At trial George R. Handler, an attorney and president of Bancroft, testified that as of February 1960 the ten three-room apartments each rented for $50 monthly, and each of the ten two-room apartments for $35 monthly. However, commencing in 1960 and until some time in 1965 the premises deteriorated and new tenants could not be obtained. As an apartment became vacant, it would be vandalized. Finally, in 1965 the building became vacant except for the caretaker. He further testified that there were constant examinations of the premises by plaintiff's agent. He was not present during these visitations and did not know what these representatives said to the tenants, nor was there any *422 testimony by anyone concerning any statements or representations made by the Agency's representatives to any tenant.
Handler further testified that as a consequence of these visitations, he contacted the Agency representative from time to time commencing in 1961 through the beginning of 1965. Particularly in 1964 he spoke with the head of the Agency, whose name he could not recall, and informed him of his inability to keep the premises rented. He was told "Don't worry, we will get to it." Handler further alluded to newspaper articles in the Jersey Journal indicating that a taking was imminent, but such newspaper articles were not produced. He further testified that all records pertaining to this property were destroyed in 1967, including the income tax returns, and that no effort was made to obtain copies of the pertinent income tax returns prior to trial. He admittedly knew of some tenement houses in the area that remained tenantable through 1968, although the majority of them became blighted.
Plaintiff's real estate experts testified that the deterioration of Bancroft's property was not caused by the declaration of blight, that properties in the Henderson Street area commenced to gradually decline from about 1940. One expert estimated the subject building to be around 90 years old, while the other expert estimated its life at 70 years as of 1960. The extremely modest rentals (assuming their collectibility) for the respective apartments prior to the declaration of blight are compelling proof of declining value.
Bancroft stresses that until the amendments to the cited statutes were enacted in late 1967, it believed it would receive no more for the property than it was worth as of the date of the declaration of taking, and therefore it would have every incentive to maintain the building in good condition and keep it tenanted. However, a contrary view is expressed in Lyons v. Camden, 52 N.J. 89 (1968). There the change effected by L. 1967, c. 217 and c. 218 was not in issue. However, the court opined that a declaration of blight ordinarily adversely affects the market value of the property *423 involved because in many instances the physical taking does not occur for a number of years. There is no reasonable market otherwise open to the property owner for the sale of the property. "Moreover, in the interim his good housekeeping incentive generally recedes and deterioration of the building sets in." Id. at 99 (emphasis supplied). As already noted, the Legislature recognized this inequity by the 1967 amendments in providing that when previously declared blighted property is condemned, the value shall be fixed at not less than the value as of the date of the declaration of blight.
We are satisfied that the proofs establish either a general declining value of property in the neighborhood, including the subject property, prior to the declaration of blight or, at best, an acceleration in the deterioration caused by the declaration of blight. In any event, a diminution in value caused by a declaration of blight does not constitute a taking in the constitutional sense. Wilson v. Long Branch, 27 N.J. 360 (1958), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). And as observed in Jersey City Redevelopment Agency v. Kugler, supra:
Since the redevelopment project might be abandoned by the municipality, it followed that no legally cognizable damage existed, at least until an actual taking occurred through exercise of the power of eminent domain. [58 N.J. at 381]
To same effect see Housing Authority of Hoboken v. Segal, 112 N.J. Super. 359, 364 (App. Div. 1970).
Clearly, the proofs do not support an actual taking by plaintiff prior to the filing of its complaint. However, Bancroft in effect alleges that the acts and conduct of plaintiff from date of the declaration of blight until some time in 1965 constituted a constructive or de facto taking which entitles it to an abatement of taxes from 1965 through 1968.
Accepting as true all the evidence offered by Bancroft, and the legitimate inferences that may be drawn therefrom, we conclude that the trial court erred in denying *424 plaintiff's motion to strike defendant's claim for an abatement of the taxes. We fail to perceive any valid testimony in the record of any conduct on the part of the Agency during the critical period in question causally related to the depreciation of Bancroft's property, or constituting a constructive "taking" prior to the filing of the complaint.
The proofs in the instant case fall far short of the proofs presented by the property owner in In re Elmwood Park Project Section 1, Group B, 376 Mich. 311, 136 N.W.2d 896 (Sup. Ct. 1965); Foster v. Herley, 330 F.2d 87 (6 Cir.1964); City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E.2d 52 (Ohio Ct. App. 1963). In each of the cited cases the evidence of the property owner could support a finding of affirmative conduct on the part of the condemning authority prior to the institution of condemnation proceedings, tantamount to a de facto or constructive taking.
Bancroft asks for interest on the jury award of $23,500 from 1965. We note that on December 13, 1968 plaintiff was ordered to deposit $19,500 with the clerk of the court. Generally speaking, interest on a jury award for the period pending condemnation is decided on a case-by-case basis in order to fix compensation which is "just." Housing Authority of Hoboken v. Segal, supra; State v. Nordstrom, 54 N.J. 50, 54 (1969). Bancroft's pleadings contain no claim for interest, and apparently interest was not sought at the trial level. Nevertheless, under the totality of the circumstances here presented we deem it "just" to allow interest at 6% on the sum of $4,000 (the difference between the amount deposited and the jury verdict) from December 31, 1968, the date of deposit, to September 15, 1970 when the jury returned its verdict.
In view of the foregoing determinations, we find it unnecessary to pass upon plaintiff's contention that the trial court committed plain error in the submission of the interrogatory to the jury. See, however, State v. Macon, 57 N.J. 325, 333 (1971).
*425 The judgment below is reversed as to the allowance of Bancroft's claim for an abatement of the taxes, and modified so as to include an interest allowance to the extent indicated.