CONLEY, J. T. C.
This matter involves the extent to which the filing of condemnation complaints by a taxing district affects the real property tax assessments of the properties sought to be condemned. Plaintiffs have challenged the 1977 and 1978 assessments on 43 separate lots. The properties have an aggregate assessment of $656,600. They are all in an area known locally as the Golden Triangle because of its desirable commercial location between Routes 22, 202-206 and 287 in Bridgewater Township, Somerset County. Plaintiffs seek to have the court determine that their properties were not taxable in 1977 and 1978, or that plaintiffs were not responsible for the taxes, because defendant Bridgewater Township filed complaints in condemnation against the property in July 1976. The Somerset County Board of Taxation affirmed the assessments each year.
*415 The procedural and factual history forming the basis for plaintiffs’ contention is relatively straightforward. On September 10,1968 the Bridgewater Township Planning Board adopted a resolution declaring the Golden Triangle to be a “blighted area” pursuant to the Blighted Area Act, N.J.S.A. 40:55-21.1 et seq. The township committee approved the planning board resolution and its declaration of blight on October 7,1968. Two of the plaintiffs in the present matter then filed an action in lieu of prerogative writs in the Law Division of the Superior Court challenging the declaration of blight. That litigation culminated in Levin v. Bridgewater Tp., 57 N.J. 506, 274 A.2d 1 (1971), app. dism. 404 U.S. 803, 92 S.Ct. 58, 30 L.Ed.2d 35 (1972). In Levin our Supreme Court recounted at great length the facts pertaining to the Golden Triangle and to its development as anticipated by both private entrepreneurs and the township. The court sustained the municipal determination of blight, finding “no reasonable basis” for challenging the decision of the local bodies that the Triangle “should be considered as a single area and developed in a homogenous fashion with a regional shopping center as the nucleus.” Id. at 539, 274 A.2d 1. Apparently nothing else that pertains to the present matter happened until July 1976, when the township filed complaints seeking to condemn the subject properties pursuant to authority granted it by the Legislature in the Blighted Area Act, specifically N.J. S.A. 40:55 — 21.10. The complaints were filed in accordance with the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq. At some point in 1979 the township filed a declaration of taking with regard to the subject properties as it was permitted to do by N.J.S.A. 20:3-17. After notice of this filing had been served on plaintiffs, the township acquired the right to immediate and exclusive possession and title to the properties. N.J.S.A. 20:3-19. In April 1980 the condemnation actions were settled and plaintiffs received approximately $2,000,000 for their properties.
The matter is before the court at this time on defendant’s motion for partial summary judgment with respect to an issue stated by plaintiffs in their pretrial memorandum, which is whether property concerning which a complaint in condemna *416 tion has been filed is exempt from taxation. At oral argument on defendant’s motion plaintiffs also moved for summary judgment on this issue. Both parties have treated the issue as involving not only a claim for exemption but also an alternative claim that even if the properties are not exempt, plaintiffs had no responsibility for the payment of taxes on the properties as of the filing of the condemnation complaints.
Neither party has cited any authority in connection with the exemption claim and the court has found none. Exemptions from the common burden of real property taxation cannot be created by the courts; they must be clearly established by legislative enactments. The State Constitution provides that “Exemption from taxation may be granted only by general laws.” N.J.Const. (1947), Art. VIII, § I, par. 2. Since the Legislature has not enacted any law granting a real property tax exemption to property which a municipality is seeking to condemn, plaintiffs cannot prevail on this issue. Defendant’s motion for partial summary judgment as it pertains to the exemption claim is therefore granted and plaintiffs’ motion is denied.
The remaining issue presented by the cross-motions for summary judgment is whether plaintiffs remained liable for the payment of real property taxes assessed against their properties after the condemnation complaints had been filed in 1976. Plaintiffs have sought to argue that they had no taxable interest in the properties as of the declaration of blight in 1968, but the only matters before this court involve the assessments for 1977 and 1978. If plaintiffs had any basis for challenging their assessments for 1969 through 1976 they waived it by not filing appeals for those years. N.J.S.A. 54:3-21; N.J.S.A. 54:2-39. Each annual property tax assessment stands on its own and taxpayers who do not file annual appeals to challenge their assessments cannot be heard at a later date to argue that the assessments for earlier years were excessive, unfair or otherwise inappropriate. Of course, if a taxpayer prevails on an appeal for any year, he has the benefit of a “frozen” assessment for two additional years pursuant to the Freeze Act if certain *417 statutory conditions are met. N.J.S.A. 54:3-26; N.J.S.A. 54:2-43. However, in the present case the Freeze Act does not apply because there has not been any judgment final reducing plaintiffs’ assessments for any relevant year.
This court concludes that plaintiffs remained liable for the real property taxes assessed against their properties in 1977 and 1978 despite the filing of the condemnation complaints by defendant in July 1976. The Legislature specifically addressed this issue in N.J.S.A. 54:4 — 56, which provides as follows:
Upon the sale and transfer for a valuable consideration or the acquisition through eminent domain or similar proceedings of any real estate in this state, unless otherwise provided in a written agreement between the seller and purchaser or the parties in said proceedings or unless otherwise expressly stipulated, the seller or owner of property to be acquired shall be liable for the payment of such proportion of the taxes for the current year upon the property to be conveyed or so acquired as the time between the previous January first and the date of the delivery of the deed by the seller to the purchaser or the date the condemning body acquired its title bears to a full calendar year. If the amount of the taxes for the current year shall not have been determined at the time of the delivery of the deed of conveyance or the taking of its title by the condemning body, the amount of the taxes last previously assessed against such real estate shall be used as the basis for computing the apportionment herein provided. [Emphasis supplied]
The Legislature defined the phrase, “the date the condemning body acquired its title,” as used in N.J.S.A. 54:4-56 when it adopted the Eminent Domain Act of 1971. In that act the Legislature provided that “the right to the immediate and exclusive possession and title to the property described in the declaration of taking shall vest in the condemnor” on the date of service of a copy of the declaration of taking and notice of its filing upon the condemnee. N.J.S.A. 20:3-19. In the present case acquisition of title by defendant did not occur until 1979, when defendant filed and served its declaration of taking. The clear language of N.J.S.A. 54:4-56 therefore required plaintiffs to remain responsible for the payment of real property taxes on their properties during 1977 and 1978. The same result would follow from the clear language of the Eminent Domain Act which requires, insofar as it applies to this matter, that a condemnor reimburse the owner of a condemned property for “the pro rata portion of real property taxes paid which are allocable to a period subsequent to the date of vesting title in *418 the condemnor....” N.J.S.A. 20:3-26(a)(2). Cf. East Orange v. Palmer, 47 N.J. 307, 321-327, 220 A.2d 679 (1966); Edgewater v. Corn Products Refining Co., 136 N.J.L. 664, 57 A.2d 39 (E. & A. 1948).
Two decisions construing the law as it was before the enactment of the Eminent Domain Act also support this conclusion. In Hoboken Housing Auth. v. Segal, 112 N.J.Super. 359, 271 A. 2d 439 (App.Div.1970), defendant owned four five-story buildings which had been declared blighted by the condemning authority in September 1967. Complaints in condemnation were filed in October 1968 and declarations of taking were filed in April 1969. Plaintiff in that case asserted that he should be reimbursed for real estate taxes paid for the period between the declaration of blight and the declaration of taking. The court said:
Of necessity, there must be an administrative lag between the time a municipality begins to decide whether it should declare an area blighted and the time it decides to condemn. See the steps required to be taken before condemnation can be filed as prescribed in N.J.S.A. 40:55-21.1 et seq. We can see no basis in this case, legal or equitable, to charge the Housing Authority with interest and taxes for such delay, [at 364-365, 271 A.2d 439]
In the subsequent year the Appellate Division considered a similar issue in Jersey City Redevelop. Agency v. Bancroft Realty Co., 117 N.J.Super. 418, 285 A.2d 48 (App.Div.1971). The court there held that, absent any conduct on the part of the condemnor during the period following a declaration of blight and prior to the declaration of taking that was causally related to the depreciation of the landowner’s property, or constituting a constructive taking, the landowner was not entitled to an abatement of taxes for a period subsequent to the declaration of blight and prior to the declaration of taking. The court stated that although a diminution in value can result after a declaration of blight, it does not constitute a taking in the constitutional sense. In the present litigation defendant took no action which constituted a taking until the filing of the declaration of taking pursuant to N.J.S.A. 20:3-17 in 1979. See, also, Milmar Estate v. Fort Lee, 36 N.J.Super. 241, 115 A.2d 592 (App.Div. 1955); “Taxes — Eminent Domain,” 45 A.L.R.2d 522, 536-537 (1956).
*419 Plaintiffs place considerable reliance on Lomarch Corp. v. Englewood, 51 N.J. 108, 237 A.2d 881 (1968). In Lomarch plaintiff challenged the constitutionality of the Official Map Act, N.J.S.A. 40:55 — 1.32, which provided that upon application for approval of a plat, a municipality could reserve for future public use the location and extent of public parks and playgrounds as shown on the official map for a period of one year. Englewood had designated a tract of land as “reserved for use as a public park” under N.J.S.A. 40:55-1.32 immediately after plaintiff had applied for approval to subdivide the 16-acre tract for the construction of single-family dwellings. The court noted that the practical effect of the action of the council under the act was to freeze for a one-year period any attempt to develop the designated land, and it held that this was a taking of property for which the municipality had to compensate the owner. The court then stated its view on what would be just compensation:
Although the question is not formally before us, in anticipation of further proceedings concerning the establishment of reasonable compensation to plaintiff for this taking and for future guidance of the parties, we suggest that fair compensation would be attained in the following manner: The landowner should receive the value of an “option” to purchase the land for the year. The “option” price should, among other features, reflect the amount of taxes accruing during the “option” period. This sum can be established by expert advice and opinion.... [at 113-114, 237 A.2d 881]
In my view the Lomarch decision is inapposite. Lomarch involved a situation in which there was a temporary taking of plaintiff’s land for one year, during which, plaintiff was deprived of use of the property. In the present case plaintiffs were not deprived of the use of the land until the actual declaration of taking was filed. Furthermore, the Blighted Area Act and the Eminent Domain Act both provide for just compensation for plaintiffs during such time by “freezing” the value of the property at the highest possible value. The court in Lomarch discussed what it considered to be just compensation only because the Legislature had not provided for any such compensation under the statute at issue. In the present litigation the previously discussed statutes provide for compensation to a plaintiff whose land is declared blighted and condemned and there is no need for the court to attempt to construct any *420 remedy for plaintiffs. In any event, Jersey City Redevelop. Agency v. Bancroft, supra, was decided subsequent to the Lo-march decision. In Jersey City Redevelop. Agency the court dealt with a declaration of blight and its impact on the rights of property owners during the time the property had been declared blighted and prior to the filing of a condemnation complaint. The Appellate Division explicitly recognized the impact a declaration of blight could have on an area but found that such a declaration does not constitute a taking in the constitutional sense. In fact, the court explicitly held that no legally cognizable damage existed, at least until an actual taking occurred through exercise of the power of eminent domain. 117 N.J.Super. at 423, 285 A.2d 48. The situation in the Jersey City case is more relevant to the present facts and the opinion in Lomarch is of no assistance to plaintiffs.
For the reasons set forth above, defendant’s motion for partial summary judgment as to the liability of plaintiffs for the 1977 and 1978 taxes is granted and plaintiffs’ cross-motion in all respects is denied. Defendant shall submit an appropriate order. The cases will now be listed for trial on the issue of valuation, at which time the parties of course may argue the effect of the declaration of blight and of the then pending condemnation actions on the assessments that should have been placed on the properties.