YEHUDA BARSEL, M.D., PLAINTIFF-APPELLANT, v. WOOD-BRIDGE TOWNSHIP ZONING BOARD OF ADJUSTMENT AND THE MUNICIPAL COUNCIL OF THE TOWNSHIP OF WOOD-BRIDGE AND THE TOWNSHIP OF WOODBRIDGE, A MUNICI-PALITY IN THE COUNTY OF MIDDLESEX, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1983—Decided March 14, 1983.

76

*Gordon Berkow* argued the cause for the appellant (*Hutt, Berkow, Hollander & Jankowski,* attorneys).

*Wayne J. Peck* argued the cause for respondent Woodbridge Township Zoning Board (*Birnbaum & Peck,* attorneys).

*Timothy M. Casey* argued the cause for the respondents Township of Woodbridge and the Municipal Council of the Township of Woodbridge (*Alfred F. Russo,* attorney).

The opinion of the court was delivered by

PRESSLER, J.A.D.

This is an action in lieu of prerogative writs in which plaintiff Yehuda Barsel appeals from a judgment of the Superior Court, Law Division, affirming the municipal denial of his application for relief in respect of parking for his medical office.

The premises in question are located in a single-family residential zone on New Dover Road in Woodbridge. While the land development ordinance no longer permits a combined medical-office and residence in that zone, the premises have been so used for many years as a nonconforming use established and maintained by plaintiff's predecessor in title, a Dr. Eugene Gosselin. Dr. Gosselin used approximately 90% of the premises for his medical practice, and plaintiff, since his acquisition of the property in 1975, has made no greater residential use thereof.

The medical practice in Dr. Gosselin's time was an extremely active one, generating about 15 patient visits an hour during office hours and employing a substantial number of medical and paramedical staff. The extent of this activity required a substantial amount of convenient parking. The only on-site parking consisted of a U-shaped driveway accommodating seven or eight cars but in such a manner that only the first and last cars parked therein would be able to exit. Consequently, the bulk of the parking was in the public street. At some time towards the end of Dr. Gosselin's occupancy, and apparently as a result of the complaints of neighbors, the municipality adopted an ordinance prohibiting street parking on New Dover Road in the vicinity of the office. In order to accommodate his parking needs, Dr. Gosselin established a gravelled parking area at the front of the premises where cars could be parked perpendicularly to New Dover Road. That parking area lies substantially within the public right of way of New Dover Road although not on any paved portion thereof. In time the gravel surface disappeared and the parking area was apparently simply a grassy strip. Plaintiff acquired the property with these parking arrangements and continued them.

The present controversy began in 1979 when plaintiff was issued a summons on a municipal complaint challenging the legality of his use of the perpendicular parking area on the unpaved portion of the public right-of-way. At that point plaintiff attempted to solve his parking problems by applying to the board of adjustment for a variance permitting him to expand the nonconforming use by creating in effect an appropriate on-site parking lot. Apparently by rider to the application, he also sought permission to continue to use the perpendicular parking area either in addition to or alternatively to the proposed on-site parking lot. The municipality's planning board and planning department reported to the board of adjustment in generally favorable terms respecting the on-site parking lot. Following public hearing, however, the board of adjustment voted to deny the application in its entirety. Plaintiff appealed to the municipal council, which concurred in the board of adjustment's determination. This action challenging the determinations of both the board of adjustment and the council ensued. The Law Division sustained the municipal decisions and plaintiff appeals.

Both in the trial court and before us, plaintiff argues that the municipal denial of the application in respect of the on-site parking lot was arbitrary and capricious since his proofs before the board of adjustment clearly demonstrated compliance of his proposal with both the affirmative and negative criteria of *N.J.S.A.* 40:55D–70(d). Our review of the record persuades us, however, that there was an adequate evidential basis for the denial. It is our view that the adverse findings of fact respecting that portion of the application as set forth in the resolutions of both municipal bodies were adequately supported by the evidence and, in turn and as a matter of law, adequately supported the ultimate adverse determination. Accordingly, we affirm the Law Division as to that claim for the reasons orally stated by the trial judge.

Plaintiff's second contention relates to his application for permission to continue to use the perpendicular parking area in the unpaved right-of-way. It is his position that neither the resolution of the board of adjustment nor of the governing body addressed that portion of the application and that there was hence no denial thereof. Thus, he argues, he is entitled to relief pursuant to the automatic approval provisions of *N.J.S.A.* 40:55D–10(g). This argument is not without merit. The resolutions do not, in fact, expressly address the existing perpendicular parking area, and it is legitimately arguable that the respective denials of relief are not construable as encompassing that part of the application. We do not, however, reach that question because we are satisfied that there is a more fundamental bar to the relief therein sought.

 Plaintiff asserts that the jurisdiction of the board of adjustment to grant his perpendicular parking area request is not within its variance relief power conferred by *N.J.S.A.* 40:55D–70 but is, rather, based upon the specific grant of statutory jurisdiction conferred by *N.J.S.A.* 40:55D–34. We agree that the board's power to grant the relief requested is either conferred by that section or not at all. We conclude, however, that that section is not applicable to this request and hence that the board of adjustment lacked the authority to grant it.

*N.J.S.A.* 40:55D–34 provides in full as follows:

> For purpose of preserving the integrity of the official map of a municipality no permit shall be issued for any building or structure in the bed on any street or public drainage way, flood control basin or public area reserved pursuant to section 23 hereof as shown on the official map, or shown on a plat filed pursuant to this act before the adoption of the official map, except as herein provided. Whenever one or more parcels of land, upon which is located the bed of such a mapped street or public drainage way, flood control basin or public area reserved pursuant to section 23 hereof, cannot yield a reasonable return to the owner unless a building permit is granted, the board of adjustment, in any municipality which has established such a board, may, in a specific case, by an affirmative vote of a majority of the full authorized membership of the board, direct the issuance of a permit for a building or structure in the bed of such mapped street or public drainage way or flood control basin or public area reserved pursuant to

section 23 hereof, which will as little as practicable increase the cost of opening such street, or tend to cause a minimum change of the official map and the board shall impose reasonable requirements as a condition of granting the permit so as to promote the health, morals, safety and general welfare of the public. Sections 59 through 62 of this act shall apply to applications or appeals pursuant to this section. In any municipality in which there is no board of adjustment, the planning board shall have the same powers and be subject to the same restrictions as provided in this section. [Footnotes omitted].

Plaintiff's argument is, simply, that this provision applies not only to mapped or, as they are commonly referred to, paper streets, but also to streets which have been physically laid out and are in actual public use. Although neither this section of the law nor its predecessor, *N.J.S.A.* 40:55–1.38, has apparently been construed in this regard, we have no doubt that its applicability is limited to mapped streets not yet in physical existence. First, the section literally so provides. It refers to a parcel of land upon which the bed of a *mapped* street is located.[1] The provision respecting a reasonable return, moreover, is irrelevant in respect of a lot already laid out abutting an existing street. And, finally, the statutory prerequisite for the grant of relief is that any such relief "will as little as practicable increase the cost of opening such street or tend to cause a minimum change of the official map." These criteria are only relevant to a mapped, in contradistinction to an opened, street. In short, the entire tenor of the section bespeaks its exclusive concern with unimproved land whose potential utility is affected by reason of a municipal reservation of a portion thereof for the public user. *Cf. Lomarch Corp. v. Englewood,* 51 *N.J.* 108 (1968).

We are further satisfied that our reading of *N.J.S.A.* 40:55D–34, which would preclude a board of adjustment from according private rights in a public right-of-way or, indeed, from otherwise modifying the use of a public right-of-way, comports with long-standing law in this jurisdiction. As definitively stated in *Miller v. Penna.-Reading Seashore Lines, Inc.,* 120 *N.J.L.* 172,

---

[1] In any case, the premises here are not located on the bed of a street, mapped or existing, but are, rather, merely adjacent to and abutting upon a street.

176 (E. & A.1938), "It is well established in this state, that when a turnpike or highway is laid out for a certain width ... the entire space becomes devoted to public use for all purposes of a highway, and the right of the public to use such highway extends to the whole breadth thereof, and not merely to the part which is worked or actually traveled ...." [2] Clearly, once a public right-of-way is established, whether or not fully paved, any regulation of parking thereon must be in the public rather than a private interest and is within the exclusive jurisdiction, at least on the municipal level, of the governing body pursuant to *N.J.S.A.* 39:4–197 *et seq.* Thus, it is our conclusion that the board of adjustment lacked the jurisdiction under *N.J.S.A.* 40:55D–34 to grant the relief here sought.

The final question is the validity of Art. V, § 8.C.3. of the Woodbridge Land Development Ordinance, prescribing the manner of service of notice to interested parties of an appeal to the governing body. The statute, *N.J.S.A.* 40:55D–17(b), requires such notice to be given by the governing body itself. The 1979 version of the Woodbridge land development ordinance conformed with this stipulation. Art. V, § 8.C.3. was thereafter, however, amended to require the applicant to give the notice. Since the amended version of that section is in direct contradiction to the statutory prescription, it is clearly invalid. The judgment below adjudicating the validity of this section is, therefore, clearly erroneous.

It is plaintiff's contention that this invalidity tainted the entire proceeding before the governing body. We are, however, satisfied that the nature or extent of the illegality could not possibly have had such an effect. Its only consequence was to transfer from the governing body to plaintiff the onus of giving the required notice.

---

[2]Nor, of course, can there be a prescriptive private right in a public right-of-way. *See, e.g., Passaic Freeholders Bd. v. Cimorelli,* 22 *N.J.Super.* 275, 279 (Ch.Div.1952).

The judgment of the Law Division is reversed insofar as it adjudicates the validity of Art. V, § 8.C.3. of the Land Use Development Ordinance of the Borough of Woodbridge, and the matter is hereby remanded to the Law Division for entry of judgment in that respect consistent herewith. In all other respects, the judgment appealed from is affirmed.