53 A.3d 677

LEE HOAGLAND AND DENISE HOAGLAND, PLAINTIFFS–APPELLANTS, v. CITY OF LONG BRANCH, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

THE ESTATE OF ALBERT VIVIANO, PLAINTIFF–APPELLANT, v. CITY OF LONG BRANCH, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

ALAN COOK AND LUCY HUNTER, PLAINTIFFS–APPELLANTS, v. CITY OF LONG BRANCH, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

KARIN KANDUR AND PATRICIA TAYLOR, PLAINTIFFS–APPELLANTS, v. CITY OF LONG BRANCH, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 27, 2012—Decided October 11, 2012.

322

Before Judges AXELRAD, NUGENT and HAAS.

*Peter H. Wegener* argued the cause for appellants (*Bathgate, Wegener and Wolf, P.C.*, attorneys; *Mr. Wegener*, on the brief).

*Lawrence H. Shapiro* argued the cause for respondent (*Ansell Grimm and Aaron, P.C.*, attorneys; *Mr. Shapiro*, on the brief).

The opinion of the court was delivered by

HAAS, J.S.C. (temporarily assigned)

This case returns to us after remand proceedings directed by our previous opinion. *See City of Long Branch v. Anzalone,* Nos. A–0067–06T2, A–0191–06T2, A–0192–06T2, A–0195–06T2, A–0196–06T2, A–0197–06T2, A–0198–06T2, A–0654–06T2, 2008 *WL* 3090052 (App.Div. August 7, 2008), *certif. denied,* 199 *N.J.* 134, 970 *A.*2d 1050 (2009). On remand, the City of Long Branch (City) abandoned its condemnation actions and agreed to pay litigation expenses to the affected property owners. The current plaintiffs, however, sought additional compensation based upon their contention that the condemnation actions had constituted a "temporary taking" of their properties. Plaintiffs appeal the trial court's August 18, 2011 Order granting the City's motion for summary judgment.[1] We affirm.

## I.

We begin by referencing the essential background facts as set forth in our earlier opinion. The defendants in that matter, which

---

[1] Plaintiffs' appeals were consolidated by a prior order of this court.

included some, but not all, of the plaintiffs in the present appeal, were homeowners in a neighborhood in Long Branch which the City had declared to be in need of redevelopment. (*Op.* at 325, 53 *A.*3d at 679). The City adopted a redevelopment plan in 1996. *Ibid.* In 2005 and 2006, the City filed condemnation actions against the defendants, who filed motions to dismiss. *Ibid.* The trial court denied the motions and granted judgments in favor of the City, appointing condemnation commissioners. *Ibid.*

The trial court had decided these cases prior to the Supreme Court's decision in *Gallenthin Realty Development, Inc. v. Borough of Paulsboro*, 191 *N.J.* 344, 924 *A.*2d 447 (2007), which reaffirmed that the New Jersey Constitution requires a finding of actual blight before private property may be taken for purposes of redevelopment. (*Op.* at 325–26, 53 *A.*3d at 679–80). Therefore, we reversed the judgments appointing commissioners and remanded the matter to afford the City the opportunity to amplify the record to meet the *Gallenthin* standard. (*Op.* at 325–27, 53 *A.*3d at 679–80).

On remand, the trial court appointed a mediator and settlement discussions ensued. On September 16, 2009, a Consent Order of Settlement was entered. The City agreed to dismiss all of its condemnation complaints against all of the defendants, to abandon the eminent domain proceedings, and to pay defendants' litigation costs.[2]

There were two classes of defendants who settled, those who executed releases of their claims for further compensation from

---

[2] One of the plaintiffs involved in the present appeal is the Estate of Viviano. While the first appeal was pending before us, the Estate asked to be dismissed from the appeal so it could sell its property. The Estate's motion was granted. The City declined to file a declaration of taking of the Estate's property and abandoned its condemnation action against the Estate. Because the Estate was no longer a party to the matter that had been remanded to the trial court, it did not participate in the settlement. However, as part of the current litigation, the City agreed to pay the Estate its attorneys' fees and costs in the prior condemnation action.

the City and those who did not. Under the settlement, only the releasing defendants were permitted to seek redeveloper status with the City and to obtain tax benefits if they were successful. The non-releasing defendants, however, retained the right to file new actions against the City to seek compensation for the alleged "taking" of their properties as a result of the City's now-abandoned condemnation actions.

Plaintiffs in this action were non-releasing defendants in the prior condemnation actions. In 2010, plaintiffs filed a series of complaints against the City alleging they were entitled to "just compensation" for the "temporary taking" that had occurred as a result of the abandoned condemnation actions. Plaintiffs argued a "taking" of their properties occurred when the City filed its condemnation actions in 2005 and 2006, and that this taking continued until the litigation was settled in 2009. Even if the filing of the condemnation actions did not, in and of itself, constitute a taking, plaintiffs alleged the trial judge nevertheless ruled that a taking had actually occurred. Assuming there was no taking by operation of the Eminent Domain Act, *N.J.S.A.* 20:3-1 to -50, (Act), plaintiffs also contended a taking occurred because their properties lost value and because they were unable to develop, mortgage, or sell them during the pendency of the litigation. They sought actual and compensatory damages, a refund of the property taxes they had paid during the period of time the matter was being litigated, interest, and attorneys' fees and costs.

Plaintiffs' complaints were consolidated by the trial court and the City moved for summary judgment. After oral argument, the trial judge issued a written opinion granting the City's motion as to all plaintiffs and finding that no compensable taking had occurred. This appeal followed.

## II.

When a party appeals a trial court's grant of summary judgment, we review *de novo* whether summary judgment was proper.

*Simonetti v. Selective Ins. Co.*, 372 *N.J.Super.* 421, 427, 859 *A.*2d 694 (App.Div.2004). Accordingly, we must first decide whether there was a genuine issue of fact, and then, if there was not, whether the trial court's ruling on the law was correct. *Prudential Prop. & Cas. Ins. Co. v. Boylan*, 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.), *certif. denied*, 154 *N.J.* 608, 713 *A.*2d 499 (1998). In performing our appellate function, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995); *see also R.* 4:46–2(c).

■ Both our federal and state constitutions prohibit the taking of private property for public use without "just compensation." *U.S. Const.* amend. V; *N.J. Const.* art. I, par. 20. In New Jersey, the Act sets forth the mechanism by which municipalities, like the City, may condemn and take private property. The purpose of the Act is "to encourage entities with condemnation powers to make acquisitions without litigation." *Borough of Rockaway v. Donofrio*, 186 *N.J.Super.* 344, 353, 452 *A.*2d 694 (App.Div.1982), *certif. denied*, 95 *N.J.* 183, 470 *A.*2d 409 (1983). Thus, *N.J.S.A.* 20:3-6 requires that a municipality negotiate with the affected property owner to attempt to determine the appropriate compensation for the taking before a condemnation action may be commenced. *Rockaway, supra,* 186 *N.J.Super.* at 353–54, 452 *A.*2d 694.

When negotiations do not produce an amicable resolution, however, the municipality may file a complaint to condemn the property. *N.J.S.A.* 20:3–8. Within fourteen days of filing the condemnation complaint, the municipality shall file and record a notice of lis pendens concerning the property. *N.J.S.A.* 20:3–10.

As they did in the trial court, plaintiffs again argue that, under the Act, the mere filing of condemnation complaints and the accompanying lis pendens by the City constituted a temporary

taking of an "interest in their properties" for which they should be compensated. We disagree.

The terms of the Act are clear. Pursuant to *N.J.S.A.* 20:3–17, a taking of the property does not occur until the municipality files and records a "declaration of taking." *Twp. of Wayne v. Ricmin, Inc.*, 124 *N.J.Super.* 509, 517, 308 *A.2d* 27 (App.Div.), *certif. denied*, 63 *N.J.* 538, 310 *A.2d* 459 (1973). The municipality may simultaneously file a declaration of taking with its condemnation complaint and, if it follows that course, it has "the right to the immediate and exclusive possession and title to the property." *N.J.S.A.* 20:3–19; *County of Monmouth v. Wissell*, 68 *N.J.* 35, 38, 342 *A.2d* 199 (1975). Alternatively, the municipality may withhold the filing of the declaration of taking, thereby preserving its right to dismiss the action at a future time. *N.J.S.A.* 20:3–35; *Twp. of Piscataway v. So. Washington Ave., LLC*, 400 *N.J.Super.* 358, 367, 947 *A.2d* 663 (App.Div.2008). If the municipality decides to abandon its condemnation action, rather than to file a declaration of taking to obtain possession of the property, it is required to pay the property owner its litigation expenses. *N.J.S.A.* 20:3–35.

That is exactly what happened in this case. After the City filed its condemnation complaints and lis pendens, plaintiffs objected by denying the authority of the City to take their properties through eminent domain. *N.J.S.A.* 20:3–11. They filed motions to dismiss the complaints so they could retain their properties. The City did not file or record any declarations of taking during the pendency of the condemnation litigation, the ensuing appeal,[3] or the proceedings on remand. Instead, the City decided to abandon all of the condemnation actions and to pay plaintiffs' litigation expenses pursuant to *N.J.S.A.* 20:3–35. Because no

---

[3] Indeed, one of the plaintiffs in this case, the Estate of Viviano, successfully had its appeal dismissed so it could return to the trial court to file a motion to compel the City to either file a declaration of taking or abandon its condemnation action against the property. Obviously, therefore, there had been no taking under the Act of that property, which was similarly situated to all of the other properties involved in this case.

declarations of taking were filed by the City and because, under the Act, a taking does not occur unless and until such a declaration is filed, there was no taking of plaintiffs' properties by the City under the Act.

Plaintiffs next argue that, regardless of whether a taking occurred by operation of the Act once the City filed its condemnation complaints, the trial judge who presided over the original matter nevertheless issued a decision and orders in which he found that such a taking had occurred. Again, we disagree. Plaintiffs have misread the clear terms of the judge's decision.

"Under the [Act,] the complaint in an eminent domain proceeding simply *prays* for judgment that the condemnor is duly vested with and has duly exercised its authority to acquire the property being condemned, and for an order appointing commissioners to fix compensation. *N.J.S.A.* 20:3–8." *Twp. of Wayne, supra,* 124 *N.J.Super.* at 517, 308 *A.*2d 27. The " 'taking' does not occur until the filing and service of the 'declaration of taking' pursuant to *N.J.S.A.* 20:3–17 and 19." *Ibid.* Thus, in this case, the orders to show cause filed by the City all clearly stated that the relief it sought was a ruling "[d]etermining that [the City] is duly authorized and has duly exercised its authority to acquire" each of the subject properties, and for the appointment of commissioners pursuant to *N.J.S.A.* 20:3–12. The City did not seek to take any of the properties at that time.

In his written decision, the trial judge specifically stated that, because plaintiffs had filed a challenge to the City's authority to take their properties through eminent domain, "[a]ll issues raised regarding the right to exercise eminent domain must be determined before the appointment of commissioners and taking of possession" of the properties by the City could occur. The City's authority to proceed with the condemnation action was all that was before, and was all that was decided by, the trial judge. The judge explained that, because "a definitive ruling" had been made "that the taking is authorized by law," commissioners could be appointed and the condemnation process could continue.

■ Thus, the judge's ruling merely confirmed that the City had the right to exercise its powers of eminent domain with respect to plaintiffs' properties. Contrary to plaintiffs' contention, the judge did not rule the City had already "taken" their properties, either in whole or in part. Consistent with this ruling, the orders entered by the judge merely provide that the City "is duly vested with and has duly exercised its powers of eminent domain to acquire the subject properties of the Defendant owners."

By their express terms, the orders did not constitute a "taking" of the properties. Rather, the orders confirmed the City's authority to take the properties and appointed commissioners to work on determining the appropriate compensation to be paid if declarations of taking were subsequently filed and recorded by the City. The City later decided to abandon all of the condemnation actions. At that point, the only compensation to which plaintiffs were entitled under the Act was payment of their litigation expenses under *N.J.S.A.* 20:3–35. The City paid each plaintiff these expenses as part of the settlement. Therefore, plaintiffs' arguments lack merit.[4]

Plaintiffs next argue that, even if a taking of an interest in their properties did not occur when the City invoked the provisions of the Act, a temporary taking nevertheless occurred under general constitutional principles. Without now deciding whether the Act

---

[4] In support of their argument that they should receive more than their litigation expenses as compensation, plaintiffs point to dicta in *Borough of Tenafly v. Centex Homes Corp.*, 139 *N.J.Super.* 490, 501, 354 *A.*2d 382 (Law Div.1976), where the Law Division indicated that, if a municipality abandoned a long-running condemnation action, the property owner "will probably be entitled to additional compensation," above what it would receive if its litigation expenses were paid under *N.J.S.A.* 20:3–35. However, the court specifically stated it was *not* deciding that issue at that time. *Ibid.* Moreover, in *Township of Pemberton v. Berardi*, 378 *N.J.Super.* 430, 448, 876 *A.*2d 287 (App.Div.2005), we expressly criticized the Law Division's resolution of the dispute in *Centex Homes*, which included requiring Tenafly to deposit compensation in court, while permitting the municipality to avoid filing a declaration of taking for an unlimited period off time. Therefore, *Centex Homes* does not support plaintiffs' contention.

provides property owners with their exclusive remedy in terms of compensation, it is clear that this argument also lacks merit.

It is well established that

a compensable taking can occur when governmental action substantially destroys the beneficial use of private property. Restrictions on land use short of total appropriation, if sufficiently extensive and prolonged, may constitute a taking ... Whether such restrictions upon the development of land, as opposed to outright appropriation, constitute a compensable taking usually turns on the particular facts of each case.

[*Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm.*, 98 *N.J.* 258, 263–64, 486 *A.*2d 330 (1985) (citations omitted).]

Here, plaintiffs contend their properties lost value and they were unable to sell or develop their properties until the condemnation actions were abandoned. As the trial court found, however, there is no factual support for these claims in the record.

With the exception of the Estate of Viviano, none of the property owners attempted to sell their properties. Estelle Toscano, the Executrix of the Estate of Viviano, testified at a deposition that the decedent had never wanted to sell the property during his lifetime. After being dismissed from the prior appeal, the Estate was successful in selling its property in accordance with the decedent's will. There was nothing preventing any other plaintiff from following a similar course.

Plaintiff Alan Cook testified at a deposition that he had never "thought about selling the property at all, period." He had also never sought to improve his property. In her deposition, plaintiff Patricia Taylor stated she never marketed the two units on her property because they were occupied by herself and her daughter. While she believed her daughter had looked into refinancing the mortgage, she did not attempt to refinance after the City filed its complaint. She was never denied the right to make improvements to her property.

Plaintiff Denise Hoagland asserted that she believed it would have been difficult for any of the plaintiffs to sell their homes during the pendency of the litigation based on things she had heard from neighbors. However, she never tried to sell or

improve her property. Hoagland testified that a refinancing application filed by her and her husband was denied and alleged it was "[b]ecause of the Hall of Records. From what we were told, the Hall of Records in Freehold had the condemnations listed." However, no documentation of the denial of the application was provided in response to the City's motion.

These anecdotal, mostly hearsay, accounts of problems plaintiffs allegedly had with the marketability of their homes were insufficient to support a finding that a taking of their properties had occurred. Our Supreme Court "has determined that neither diminution of land value itself nor impairment of the marketability of the land alone constitutes a taking." *Pheasant Bridge Corp. v. Tp. of Warren*, 169 *N.J.* 282, 298, 777 *A.*2d 334 (2001), *cert. denied*, 535 *U.S.* 1077, 122 *S.Ct.* 1959, 152 *L.Ed.*2d 1020 (2002). Even in a case where the municipality has declared a particular area is "blighted," and property values have thereafter deteriorated, we have held that "a diminution in value caused by a declaration of blight does not constitute a taking in the constitutional sense." *Jersey City Redev. Agency v. Bancroft Realty Co.*, 117 *N.J.Super.* 418, 423, 285 *A.*2d 48 (App.Div.1971).

Thus, contrary to plaintiffs' contentions, this matter is distinguishable from *Schiavone Construction Co., supra,* where the condemnor had placed an absolute moratorium on real estate development. 98 *N.J.* at 263–64, 486 *A.*2d 330. While the condemnation actions were pending in this case, however, the City took no action to prevent any of the plaintiffs from improving their properties. Thus, no taking occurred.

Likewise, this case is plainly distinguishable from *Lomarch Corp. v. Mayor of Englewood*, 51 *N.J.* 108, 237 *A.*2d 881 (1968). There, the municipality enacted an ordinance designating the plaintiff's property as being "reserved" for future public use as a park. *Id.* at 110, 237 *A.*2d 881. "[T]he practical effect of the ordinance was to 'freeze,' for a one[-]year period, any attempt to develop the designated land." *Id.* at 111, 237 *A.*2d 881. Under those circumstances, the Supreme Court ruled that there had been

a taking and determined that an option for the purchase of the land in issue for the period of time the property had been reserved was the appropriate measure of compensation for the plaintiff. *Id.* at 113, 237 *A.*2d 881. Here, however, the City neither took plaintiffs' properties nor prevented them from selling or developing them. Clearly, no "option" had been taken against the land by the City.

Rather, this is a case where the City followed the provisions of the Act in filing its condemnation actions. The litigation it commenced did not "destroy[ ] the beneficial uses of a particular property." *Washington Mkt. Enters. v. City of Trenton,* 68 *N.J.* 107, 116, 343 *A.*2d 408 (1975). During the course of the litigation, plaintiffs retained the right to live on, develop and even sell their properties. When the condemnation was abandoned, the City paid all of plaintiffs' litigation expenses. Because there was no "unconstitutional taking" of their properties, plaintiffs are not entitled to any additional compensation.

■ Finally, plaintiffs are not entitled to an abatement or refund of the real estate taxes they paid during the pendency of the condemnation litigation. Pursuant to *N.J.S.A.* 20:3–26(a)(2), the condemnor is only required to reimburse the owner for "the pro rata portion of real property taxes paid which are allocable to a period subsequent to the date of vesting title in the condemnor, or the effective date of possession of such real property by the condemnor, whichever is earlier." Here, the City never filed a declaration of taking in connection with any of plaintiffs' properties. Thus, plaintiffs remain responsible for their own property taxes. *See Jersey City Redev. Agency, supra,* 117 *N.J.Super.* at 423–24, 285 *A.*2d 48 (rejecting claim that a declaration of blight constituted a taking of the subject property entitling the owner to an abatement of taxes).

Affirmed.