BOROUGH OF TENAFLY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, COUNTY OF BERGEN, PLAINTIFF, v. CENTEX HOMES CORPORATION, NORMAN E. BLANKMAN, STATE OF NEW JERSEY, ELLEN ANN DUNHAM, NEW EARLY CHRISTIAN CHURCH-SEEKERS AFTER, A RELIGIOUS CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided October 20, 1975.

*Mr. Philip R. Carlin (Messrs. Goldberg & Carlin,* P. A., attorneys) and *Donald W. de Cordova (Messrs. Morrison & Griggs,* attorneys), for plaintiff.

*Mr. Adrian M. Foley, Jr.* for defendant *(Messrs. McElroy, Connell, Foley & Geiser,* attorneys; *Mr. Kevin J. Coakley* on the brief).

TRAUTWEIN, A. J. S. C. This case involves the condemnation by plaintiff Borough of Tenafly of an area of land owned by Centex Homes Corporation (Centex) located in that community's East Hill district. The action originated by the filing of a complaint on May 9, 1974 against defendant Centex and others. After considerable procedural maneuvering, including a proper, yet unsuccessful, attempt by defendant Centex to challenge Tenafly's authority to condemn, the court entered judgment in favor of Tenafly on January 28, 1975 permitting the appointment of condemnation commissioners.

Throughout the summer of 1975 extensive commissioners' hearings were conducted wherein both sides presented voluminous evidence and testimony. The proofs at the hearings were so complex and extensive that a stenographic record was made — this is a rare but permissible procedure under the Eminent Domain Act of 1971, *L.* 1971 c. 361; *N. J. S. A.* 20:3–12(c).

On July 28, 1975 the commissioners issued their report and rendered a decision determining the compensation to be paid for the property in question to be $6,600,000. This figure is approximately $1,500,000 above Tenafly's estimated appraisal and it is approximately $2,500,000. below Centex's estimated appraisal.

The commissioners' award was duly appealed by defendant Centex on August 12, 1975 by the filing of its notice of appeal with the court. *N. J. S. A.* 20:3–13(a) ; *R.* 4:73–6(a). On September 18, 1975, the return date for Centex's notice of appeal, this court set a trial date of December 1, 1975.

Both parties have indicated their readiness to proceed at that time.

This case is before the court on a motion by defendant Centex. Centex seeks either to compel Tenafly to file a declaration of taking and to make a deposit in the amount of $6,600,000 with the clerk of the court pursuant to *N. J. S. A.* 20:3–25, or, in the alternative, to require Tenafly to abandon the condemnation action as per *N. J. S. A.* 20:3–35. In essence, Centex is calling for Tenafly to "either fish or cut bait!"

The question presented to the court by this motion is entirely one of law. It involves the statutory construction of part of the *Eminent Domain Act* of 1971, *L.* 1971, *c.* 361: *N. J. S. A.* 20:3–1 et seq.

The court is cognizant of the political and social ramifications that may follow from its decision today. The court is also well aware of the history of adversity between Tenafly and Centex. The court has considered the briefs and oral arguments of all counsel. It has weighed the instant public policy considerations as urged by Tenafly against the theoretical framework of the Eminent Domain Act of 1971 as urged by Centex. The court is gravely troubled by the apparent inadequacy of the act to deal clearly with the type of problem presented here. The act, which was intended to remedy the abusive practices which occurred under the myriad provisions of prior condemnation law, is itself here today a potential agent of mischief to these parties. A construction of the act which minimizes the mischief is obviously the preferred course of action.

After a careful consideration of the interplay among the various statutory provisions and the judicial gloss placed upon many of them, the court comes to the following conclusions of law:

## I.

The New Jersey Supreme Court has ruled that *all* public entities vested with the power of eminent domain have the

power to file a declaration of taking. *County of Monmouth v. Wissell,* 68 *N. J.* 35 (1975). No *specific* grant of power to file a declaration of taking is necessary.

Tenafly has argued that (1) *Wissell* is incorrect and (2) Tenafly is not empowered by specific legislation to file a declaration of taking. The ambiguity inherent in the present Eminent Domain Act of 1971 was properly and correctly clarified by the *Wissell* court. The rationale of *Wissell* is entirely applicable here. Notwithstanding that the references in *Wissell* to *N. J. S. A.* 20:3–25 (pp. 42–43) and to *N. J. S. A.* 40:60–25.58 (p. 43) may be characterized as *dicta,* the fundamental issue decided by *Wissell* is that public bodies holding the power of eminent domain do not need specific enabling legislation to file a declaration of taking.

This proposition is the law of this State. If the Legislature intended otherwise, it is for that body to now take the initiative and clarify its statutory meaning.

## II.

■ There is no basis, either constitutional or statutory, for the proposition that a municipal condemnor is entitled to special consideration. The Eminent Domain Act of 1971 and the *Report of the Eminent Domain Revision Commission of 1965* (Report) clearly contemplated the creation of a uniform law which was to be uniformly applied.

The Commission recommended a statute creating a "uniform practice and procedure for the exercise of the power of eminent domain, equally applicable to all bodies vested with such power. * * *" *Report* at 6–7; *Wissell, supra* at 38. It is clear that the Legislature also adopted the position that the statute should be uniformly applied. See *Wissell* at 39–41.

The court has considered Tenafly's argument that the Local Bond Law, L. 1960, c. 169; *N. J. S. A.* 40:2–1 *et seq.,* in setting debt limits for municipalities, requires municipal condemnors to be treated unlike other condemnors. This argument is specious and without merit. The court suggests that

the statutory debt limitation, if affecting anything in the instant case, perhaps should preclude Tenafly from proceeding with this unprecedented (in size) acquisition. If the final judgment in this case exceeds Tenafly's bonding capacity, and if this court requires Tenafly to file a declaration of taking, thereby precluding abandonment under *N. J. S. A.* 20:3–35, then the burden of paying the judgment must fall to those parties from whence it originated. It is a political burden which must be borne by the entire citizenry of Tenafly which elected and supported the government which is prosecuting this action.

### III

*N. J. S. A.* 20:3–13(d) is inapplicable to the instant motion. *N. J. S. A.* 20:3–13(d) states:

**(d)** *Payment of amount of judgment on appeal; right to possession; lien, other remedies.* The amount of the judgment on the appeal, or so much thereof as shall not have been paid, shall be paid to the parties entitled thereto or paid into court. * * *

Centex argues that this provision requires the payment of $6,600,000 into court.

The figure of $6,600,000 is very clearly the award of the commissioners. *N. J. S. A.* 20:3–12(g). It is not a judgment, it is an award. If there is no appeal from the commissioners' award (within 20 days of delivery of the commissioners' report, *R.* 4:73–6(a)), then the award becomes a final judgment under *N. J. S. A.* 20:3–12(h). If there is an appeal, as here, the award retains its character as an award.

*N. J. S. A.* 20:3–13 is applicable only to the appeal and its aftermath. Subsection (d) speaks in terms of payment of the "judgment." This plainly means a final judgment which is rendered at the conclusion of the hearing on appeal (trial *de novo*). At the present posture of this case there is no judgment extant and *N. J. S. A.* 20:3–13(d) is wholly inapplicable.

## IV

*N. J. S. A.* 20:3–18 is authority for the proposition that the commissioners' award ($6,600,000) may be deposited with the clerk of the court. *N. J. S. A.* 20:3–18 states:

*Deposit of estimated compensation*

Simultaneously with the filing of the declaration of taking, the condemnor shall deposit the amount of such estimated compensation with the clerk of the court. The amount so deposited shall be not less than the amount offered pursuant to section 6 hereof, *and if an award has been made by commissioners hereunder,* or a judgment determining compensation has been entered at the time of the filing of such declaration, *the amount so deposited shall be not less than the amount of such award* or judgment. * * *. [Emphasis supplied]

As stated above, there presently exists an award of $6,600,000. While it is true that this figure is irrelevant for purposes of the trial *de novo, N. J. S. A.* 20:3–13(b), it is not irrelevant for purposes of making a deposit. Indeed, should this court decide to require a deposit, the amount is clearly designated in *N. J. S. A.* 20:3–18.

## V

The operative statute on this motion, *N. J. S. A.* 20:3–25, is extremely confusing. Considering the apparent care Governor Cahill and his legal staff exercised in reviewing the statute in preparation for the Governor's veto, *Wissell, supra* at 40–41, it is a mystery why this section was not clarified. *N. J. S. A.* 20:3–25 states:

*Compelling condemnor to file declaration of taking*

If within 6 months from the date of the appointment of commissioners, the condemnor fails to file a declaration of taking, the court, upon application of any condemnee, and on notice to all parties in interest, may require the condemnor, at its election, to either file a declaration of taking and make the deposit hereinabove provided, or abandon the proceedings pursuant to section 35 hereof. For good cause and upon terms, the court may extend the time for the filing

of such declaration of taking, but not more than 3 months after the commencement of the action.

The first sentence of § 25 allows condemnees to apply to the court for an order compelling the condemnor to file a declaration of taking and to make the deposit pursuant to *N. J. S. A.* 20:3–18. This application can only be made after the expiration of six months from the date of appointment of commissioners. In the instant case commissioners were appointed on January 28, 1975 and therefore Centex's application is timely.

The second sentence of § 25 is procedurally absurd. The provision on its face seems to empower the court to give the condemnor a three month extension in which to file the declaration of taking. It is noteworthy that the provision does not allow an extension of time for making the deposit. However, the court is at a loss to determine from what date the Legislature intended the three months to run. If, as the sentence on its face appears, it means three months from the commencement of the action, then the time expired on August 9, 1974. This is a ridiculous result. Tenafly suggests that the statute should be read as allowing a three-month extension from the date of making the application to compel the filing of a declaration of taking and making a deposit. Centex argues that the three-month extension should be added to the six-month period so as to give the court a total of nine months in which to exercise its discretion. Considering the logical inconsistency between § 25's first sentence and second sentence, Centex's interpretation of *N. J. S. A.* 20:3–25 is most certainly erroneous.

The court is obviously troubled by the language of § 25. However, because of the ultimate result here reached, it is unnecessary to apply § 25's second sentence. The court has determined that in any event a three-month extension is unwarranted in this case and thereby disposes of the interpretative dilemma.

## VI

*N. J. S. A.* 20:3-25 vests the court with the discretion to compel or not to compel Tenafly to file a declaration of taking and to make the deposit. The statute states in relevant part:

If within 6 months from the date of appointment of commissioners, the condemnor fails to file a declaration of taking, the court, * * * *may* require the condemnor * * *, to either file a declaration of taking and make the deposit * * * or abandon the proceedings pursuant to section 35 hereof. * * * [Emphasis supplied]

In determining whether a statute is mandatory or directory regard shall be had to the purpose and intent of the Legislature. The word "may" ordinarily is permissive or directory, and the words "shall" or "must" are generally mandatory. *Harvey v. Essex Cty. Bd. of Freeholders*, 30 *N. J.* 381-392 (1959). The court is mindful that *Harvey, supra*, held that the word "may" in the statute before the Supreme Court should be read as having a mandatory connotation. In that case the intent of the Legislature was clear in calling for an imperative meaning. In the instant case it is just as clear that the intent of the Legislature was to allow the court the discretion to decide whether to compel a condemnor to file a declaration of taking and to make a deposit. The "may" here is plainly permissive.

Reference should be made to the *Report, supra* at 19:

F. From time to time, agencies may institute proceedings, but not take possession of the property until after an award has been made. In the meantime, the owner is without funds to acquire substitute property and is unable to efficiently manage his property because of loss of tenants and inability to re-rent pendente lite. This is a great hardship to property owners, particularly to owners of small properties. It is recommended that if the condemning body does not take possession within three months after institution of the proceedings, any party in interest, upon application to the court, may require the condemning body to take such possession and make the deposit herein required *unless for good cause, the court shall direct otherwise.* [Emphasis supplied]

The retention in § 25 of the word "may" indicates a legislative choice to allow the court discretion to determine whether there is good cause not to require the filing of a declaration of taking and the making of the deposit.

It is impossible to define in a general way the phrase "good cause." In terms of the Eminent Domain Act of 1971 the court must look to the evils the act sought to remedy and must carefully consider the goals of that act as they apply to the instant case.

The chief evil which the 1971 legislation sought to eradicate was the practice of condemnors, especially the State Highway Department, of taking possession of property without depositing funds or without instituting suit. The court is aware of an inordinate number of prerogative writ actions in Bergen County brought by condemnees seeking to force the since renamed Department of Transportation to institute condemnation proceedings and deposit estimated compensation. Relief, through the implementation of *N. J. S. A.* 20:3-1 *et seq.*, is only now being accorded these landowners whose properties were taken over a decade ago.

In the instant case, however, Tenafly has not taken possession of the property. Indeed, Tenafly does not want the land until it irrevocably decides whether to pay the ultimate judgment. Centex has full possession. The court, of course, recognizes that there are both *de facto* and *de jure* restrictions placed upon Centex's use of the land by Tenafly. The court is also aware that Centex.has been paying real property taxes on the land and that Tenafly has utilized these tax receipts in its municipal budget.

In order to alleviate the hardship suffered by Centex at the hands of Tenafly — a hardship, by the way, which is neither greater nor less than that suffered by other types of condemnees — the Court orders Tenafly to deposit with the clerk of the court the amount of $6,600,000. This deposit shall be made within 45 days of the signing of the order incorporating the court's disposition of this motion. If Tenafly fails to make the deposit, the court will require

Tenafly to abandon the proceedings pursuant to *N. J. S. A.* 20:3–35 unless for good cause shown the court shall direct otherwise.

However, in the exercise of its discretion under *N. J. S. A.* 20:3–25 the court will not require Tenafly to file a declaration of taking. The theory of the Eminent Domain Act is to protect the condemnee. The declaration of taking was created as a device to put persons on notice of an impending condemnation action and to trigger the transfer of possession from the condemnee to the condemnor. It does no violence to the act whatsoever to separate the declaration of taking from the deposit in appropriate cases. Tenafly does not seek possession of the property at this time. There is no reason to implement a transfer of title at this time. However, Tenafly does have the obligation to compensate the landowner for the estimated value of the property. The deposit serves this purpose at this time.

The effect of the court's decision, then, is to compensate Centex now and to allow Tenafly the option to abandon the proceedings at some time in the future. Centex is in no way prejudiced by this determination. If, after trial, Tenafly accepts the final judgment, then Centex will be fully compensated. If, however, Tenafly decides to abandon the proceedings, then Centex will be entitled to its costs and, without determining the issue now, will probably be entitled to additional compensation in the form of (1) interest, or (2) the value of an option to purchase under the principles of *Lomarch Corp. v. Englewood,* 51 *N. J.* 108 (1968), or (3) the value of a temporary *de facto* taking under the principles of *Washington Market Enterprises v. Trenton,* 68 *N. J.* 107 (1975), or (4) the value of some as yet unrecognized and undetermined interest. In the event of an appeal from the trial *de novo* the $6,600,000 will protect Centex's current interests until there is a final adjudication.

The court therefore grants in part and denies in part Centex's motion. The relief hereunder is the following:

(1) Tenafly must deposit $6,600,000 with the clerk of the court. This deposit is without prejudice to Tenafly's still extant right to abandon the proceedings pursuant to *N. J. S. A.* 20:3-35.

(2) Centex may withdraw any or all of the deposits by
 (A) submitting the proper affidavits, and
 (B) executing a consent to return the funds in the event of either:
 (a) an abandonment by Tenafly, or
 (b) the determination at the time of the trial *de novo* of a value for the property less than $6,600,000.

(3) Tenafly is not required to file a declaration of taking. Title to the property remains in Centex. The deposit with the Clerk of the court does not constitute any of the "vesting" events enumerated in *N. J. S. A.* 20:3-21.