**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1872-17T2

H.M.,[1]

    Plaintiff-Appellant,

v.

M.E.,

    Defendant-Respondent.

_____

> Submitted September 12, 2018 – Decided  October 29, 2018
>
> Before Judges Sabatino and Sumners.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0269-16.
>
> The Law Office of Rajeh A. Saadeh, LLC, attorneys for appellant (Rajeh A. Saadeh and Kelscey A. Boyle, on the brief).
>
> Norris, McLaughlin & Marcus, attorneys for respondent (Jeralyn L. Lawrence, on the brief).

---

[1] We use the parties' initials because we reference defendant's mental health history.

PER CURIAM

In this post-judgment divorce matter, the trial judge entered an order under Rule 4:42-1(c), commonly referred to as the five-day rule, denying the motion of plaintiff father to obtain primary residential custody of his three-year-old daughter and granting the motion of defendant mother to retain primary residential custody pursuant to the parties' marital separation agreement (MSA). The judge also determined that, alternatively, plaintiff's motion should be dismissed as a discovery sanction under Rule 4:23-2(b). We reverse and remand mainly because we conclude that the judge should not have applied the five-day rule to enter the order, which did not memorialize a prior ruling by the judge concerning custody, and that there was no violation of a discovery order to warrant the sanction of dismissal. In addition, an informed judicial assessment of this child's current best interest warrants a plenary hearing.

It is not necessary to detail the sordid allegations of the parties' divorce proceedings. Suffice it to say, their almost five-year arranged marriage involved accusations of abuse – physical, emotional and sexual – and mental instability. A May 11, 2017 final judgment of divorce incorporated the MSA, in which it was agreed the parties would share joint legal custody of their then two-and-a-half-year-old daughter with defendant being primary residential parent.

Six weeks after the divorce, plaintiff filed an ex parte emergent order to show cause on June 21, seeking temporary residential custody of his daughter; alleging defendant was mentally ill based upon her admission into a mental health facility and was unable to safely care for the child. The trial judge only granted plaintiff temporary residential custody and denied his request to "immediately change the parties' custody arrangement." The order further indicated that both parties may file motions regarding custody of their daughter. A return date was set for July 7.

After defendant was released from the mental health facility eight days later – having been there for a total of nine days – she submitted her own order to show cause application to vacate the June 21 order and other relief based upon her contention that defendant's order to show cause application contained biased, deceitful, and unethical accusations. The judge denied the application; noting that the issues regarding the MSA's custody arrangements would be determined on July 7.

Five days after the July 7 argument, the judge amended plaintiff's temporary custody of his daughter through entry of the July 12 order to allow parenting time by defendant, supervised by her parents. The order also required defendant to be evaluated by psychologist, Dr. Charles Most. The judge rejected

plaintiff's request that defendant be evaluated by a psychiatrist. Of note, during argument, the judge cautioned plaintiff, himself, a licensed psychiatrist, that he was not an expert witness in the dispute, and thus, should refrain from offering his professional opinion about defendant's mental health to further his goal of obtaining residential custody of his daughter.

After Dr. Most issued his report to the judge and the parties, a case management conference was held on August 29, to address all parenting issues. Following argument, the judge entered an order that day, returning the residential custody of the daughter to defendant. Relying upon his clinical interviews of both parties, psychological testing of defendant, and review of legal documents and defendant's medical records, Dr. Most reported that defendant was stable after being hospitalized for post-traumatic stress disorder, and was of "sound mind so that she can be unsupervised in her contact with her daughter." The judge thus found that defendant did "not appear to be a danger to herself or others and the parenting schedule contained in the parties' [MSA was] reinstated effective immediately."

The order set an October 20 return date for oral argument and a briefing schedule to address whether there were changed circumstances solely due to defendant's mental health to warrant a change in residential custody of the

daughter to plaintiff. The order also gave plaintiff the opportunity to brief whether he could render an expert opinion regarding defendant's medical condition. During argument, the judge preliminarily stated her concern that it appeared to be a conflict for plaintiff to provide such opinion when he was a party in the case.

Thereafter, plaintiff filed a motion to grant him sole and residential custody of his daughter. Defendant cross-moved for enforcement of the MSA, attorney fees and costs, monetary sanctions against plaintiff, and requested that the judge report plaintiff's allegedly fraudulent, unethical, and meritless diagnosis of defendant's medical condition to the Board of Medical Examiners.

On October 20, 2017, shortly after motion argument, the judge entered an order, together with a statement of reasons, requiring a plenary hearing be held "on or after January 20, 2018[,] on the issue of child custody." It was further ordered, in pertinent part, that the parties were allowed a limited discovery period: propounding of interrogatories and notices to produce within twenty days of the order; the production of expert reports to the court and opposing counsel by December 1, 2017, with reply expert reports by December 28; and the taking of depositions by January 1, 2018. The order made clear that discovery was limited to "the issue of how [d]efendant's diagnosis affects her

A-1872-17T2

fitness as a parent only," thus, "[d]iscovery with regards to other issues [was] prohibited." In addition, since plaintiff did not submit a brief addressing his request to testify as an expert witness, the order specifically limited his possible testimony to facts and not as an expert expressing his medical opinions. The judge denied all other requested relief.

Thereafter, in response to plaintiff's counsel's letter and a reply letter by defendant's counsel, the judge issued a November 9 letter to counsel clarifying that discovery and the plenary hearing were limited to whether residential custody of the daughter should change due to defendant's mental health. Undeterred, plaintiff's counsel sent the judge a November 15 letter, seeking the entry of an order memorializing "that the plenary hearing will be limited to whether . . . defendant's mental disorder(s) is [a] changed circumstance[] from the time of the divorce." The judge did not reply.

On December 4, defendant's counsel sent the judge a letter advising her that plaintiff had not made "a single discovery demand, nor have we received an expert report from [plaintiff]." Defendant requested that the judge sign a proposed order, submitted under the five-day rule, denying plaintiff's application for sole and residential custody and granting her application for residential custody of their daughter. In support, defendant cited the

recommendations of Dr. Most and defendant's treating doctor, Moustafa Shafey, M.D., who both supported defendant's request "to maintain the custody and parenting time arrangement set forth in the . . . [MSA]."

Plaintiff's counsel objected to entry of the proposed order in a December 7 letter to the judge. He wrote:

> There are reasons why we have not retained an expert for the limited discovery purpose permitted by your Honor or propounded written discovery upon the defendant. We intend to take depositions of the two non-party experts involved in this matter within the extraordinarily limited time, during the holidays, permitted by Your Honor, and we remain optimistic that Your Honor's interlocutory inclinations respecting this matter will be [a]mended upon the conclusion of this first of an unorthodox series of trials.

The next day, plaintiff's counsel sent a letter to the judge advising that a Dr. Schnaidman[2] has been retained as an expert. There is no indication in the record that a report by Dr. Schnaidman was submitted. Expert reports were due seven days earlier on December 1.

In response, defendant's counsel wrote to the judge on December 12, renewing his request that the judge enter the proposed five-day rule order. Defendant contended plaintiff failed to comply with the October 20 order

---

[2] The doctor's first name was not mentioned in the letter.

A-1872-17T2

without any "substantive" reason, and did not properly apply for relief from the order. Defendant further pointed out that plaintiff "failed to set forth any substantive, let alone specific objection to [plaintiff's] requested relief" of maintaining residential custody of their daughter. That same day, defendant's counsel sent a letter to plaintiff's counsel advising that plaintiff's expert could not evaluate defendant because the discovery period ended fourteen days earlier. Three days later, on December 15, the judge entered defendant's proposed order under the five-day rule, together with a statement of reasons, denying plaintiff's application for residential custody of the daughter "in its entirety," granting defendant's request "to enforce the custody and parenting time arrangement" under the MSA, and cancelling the plenary hearing. The judge ruled that even if the five-day rule did not apply, plaintiff's pleadings should be dismissed as a sanction under Rule 4:23-2(b) for failure to provide discovery. The same day the judge issued the order, plaintiff's counsel wrote a letter to the judge asking that she "coerce" defense counsel to allow his expert to examine defendant without having to file a motion. The letter requested the judge's staff to advise if a motion should be filed. This appeal followed.[3]

_____

[3] While the appeal was pending, plaintiff filed a motion to remand the matter to the trial court for the limited purpose of addressing the education of the parties'

Plaintiff contends that the judge erred by invoking the five-day rule to dismiss his application to obtain residential custody of his daughter and grant defendant's application to maintain the custody arrangement in the MSA because the rule did not apply to the situation at hand.

The judge's statement of reasons provided that she entered the order under the five-day rule because plaintiff "completed no discovery and did not even hire an expert until . . . one week after the expert reports were to be provided to the [c]ourt and opposing counsel," and did not "file a motion to extend discovery." The judge noted that plaintiff's December 7 objection was frivolous because he did not explain the failure to retain an expert or propound discovery. She therefore reasoned that, without an "expert to testify as to [d]efendant's mental health and its effect on her ability to parent, [plaintiff] is unable to meet his burden and his application cannot be successful." The judge found support for applying the five-day rule by citing to an unpublished opinion of this court without explaining its persuasive reasoning.

Based on our review of the five-day rule, we agree with plaintiff's contention. Rule 4:42-1 establishes three alternative means by which a proposed

daughter. However, the parties settled that discrete issue and the motion was withdrawn.

form of order may be entered.  The provision in question, the five-day rule, provides:

> Settlement on Notice.  In lieu of settlement by motion or consent, the party proposing the form of judgment or order may forward the original thereof to the judge who heard the matter and shall serve a copy thereof on every other party not in default together with a notice advising that unless the judge and the proponent of the judgment or order are notified in writing of specific objections thereto within 5 days after such service, the judgment or order may be signed in the judge's discretion.  If no such objection is timely made, the judge may forthwith sign the judgment or order.  If objection is made, the matter may be listed for hearing in the discretion of the court.
>
> [R. 4:42-1(c).]

The provision was meant

> to address the problem caused by attorneys to whom a form of judgment or order was submitted who then failed, whether by neglect, design or because of disagreement with its contents, to sign and return it to the proponent. . . . The clear intent of the rule is that in the absence of objection the court should sign the proposed order or judgment if it finds the terms thereof to constitute an accurate statement of its disposition . . . . It is, of course, clear that an order should never be either submitted or signed under this rule unless it accurately memorializes court dispositions, is submitted following default, or has all parties' consent endorsed thereon.
>
> [Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:42-1 (2014) (citing City of Jersey City v.

10

Roosevelt Stadium Marina, Inc., 210 N.J. Super. 315 (App. Div. 1986)).]

Defendant's submission of the proposed five-day order was not a memorialization of a prior court disposition because the judge never made a ruling and the parties never agreed to settlement terms on the record. City of Jersey City, 210 N.J. Super. at 331. In essence, defendant sought summary dismissal of plaintiff's application without filing a motion for summary judgement. The five-day rule should not be applied in this fashion, especially where a decision on residential custody of a child is at stake.

The judge cited her prior order that plaintiff needed to present an expert at a plenary hearing to prove defendant's mental health justified a change in circumstances to obtain residential custody of the daughter. However, the order did not dispose of the custody issue, but merely directed the party what proofs were needed. While maintaining custody as set forth in the MSA could have been the judge's ultimate disposition, it was presumptive to do so by entry of an order via the five-day rule. Instead, the judge should have required the filing of a motion supported with legal argument and, if requested, oral argument, to determine custody with a possible plenary hearing if a prima facie change in circumstance were shown.

A-1872-17T2

Moreover, the judge's reliance upon an unexplained, unpublished decision is contrary to the restrictions set forth in Rule 1:36-3 against giving such opinions binding or precedential value. Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001).

We further find some credence in plaintiff's contention that, since the deadline for taking depositions was fifteen days away on January 1, when the judge signed the five-day order on December 15, dismissing his application, he could have taken and relied upon the depositions of Dr. Shafey and Dr. Most to prove his claim that defendant was not mentally fit to retain residential custody. We also agree with his argument that since there was no obligation on him to propound interrogatories, the judge should not have considered the lack of doing so as a factor in granting defendant relief. This argument also relates to the judge's alternative basis for dismissing his application.

Plaintiff challenges the judge's alternative basis for denying his custody application as a discovery sanction under Rule 4:23-2(b); contending the judge erred in finding that he did not provide or permit discovery, as there is "no law, rule, or order" that he was obligated to propound discovery. He emphasizes that the October 20 order gave him the option to serve interrogatory questions on defendant, submit an expert report, and take depositions. Under the order's

12

discovery timelines, he had time to depose plaintiff's experts when the judge dismissed his application on December 15. As for his "reasons" for not propounding discovery, plaintiff cited his trial strategy at that time to rely upon the deposition of plaintiff's experts to show that the changed circumstances of defendant's mental health did exist to warrant a change in residential custody. Lastly, plaintiff contends that the case law, Glass v. Suburban Restoration Co., 317 N.J. Super. 574 (App. Div. 1998) and Abtrax Pharmaceutical, Inc. v. Elkins-Sinn, Inc., 139 N.J. Super. 499 (1995), relied upon by the judge to support a sanction of dismissal for failure to provide discovery is misplaced. In those cases, unlike with him, the dismissed party failed to comply with court orders requiring the production of discovery. Hence, plaintiff concludes there was no justification to dismiss his application under Rule 4:23-2(b).

Based upon our review of Rule 4:23-2(b), we agree with plaintiff that the judge should not have applied the rule to dismiss his request for primary residential custody as a discovery sanction. The rule permits a judge to enter an "order striking out pleadings or parts thereof . . . with or without prejudice, or rendering a judgment by default against the disobedient party" who "fails to obey an order to provide or permit discovery." R. 4:23-2(b)(3). In considering the ultimate sanction of striking a pleading, a judge must weigh the delinquent

13

party's right to an adjudication on the merits with the other party's right to expect compliance with the discovery rules and orders. Zaccardi v. Becker, 88 N.J. 245, 256-58, (1982). The sanction of dismissal should be used "sparingly," id. at 253, in only "those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious." Abtrax, 139 N.J. at 514, 655 (citation omitted); see also Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115-16, (2005). "Since dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party, or when the litigant rather than the attorney was at fault." Ibid. (quoting Zaccardi, 88 N.J. at 253).

We review a court's dismissal of a pleading pursuant to Rule 4:23-2(b)(3) for an abuse of discretion. Abtrax, 139 N.J. at 517. An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Measured against these standards, the judge mistakenly applied her discretion to dismiss plaintiff's application under Rule 4:23-2(b)(3). First, and

A-1872-17T2

foremost, to apply the rule to impose a sanction of dismissal, the judge had to determine that plaintiff was delinquent in providing court-ordered discovery. There was no such order. The October 20 order simply set forth discovery timelines in a permissive fashion, providing in: paragraph two, "the parties may conduct limited discovery;" and paragraph three, "each party may obtain their own experts." (emphasis added). As plaintiff notes, the case law cited by the judge addresses situations in which dismissal of a delinquent party's pleadings were in the face of violation of discovery orders – which does not apply to his conduct.

Second, while it was evident from the judge's statement of reasons that she believed any diagnosis of defendant's mental health must be proven by an expert, there was no reason why plaintiff could not have taken the deposition of defendant's experts or Dr. Most, the court appointed psychologist, and use their testimony to prove that defendant had a mental illness that showed a change in circumstances, justified a modification of the daughter's residential custody. In fact, plaintiff arguably could have presented any of them at the plenary hearing in his case-in-chief – without taking their depositions – to prove his position. Even though there was obvious risk in employing this litigation strategy, it would be premature for us to assess its wisdom. Further, because of the manner

in which the judge dismissed his application, plaintiff had no opportunity to test his strategy.

As for defendant's contentions that the judge erred by modifying the custody at the August 29 case management conference and by appointing Dr. Most, who was not a licensed psychiatrist [but a licensed psychologist], to evaluate defendant, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the judge in her respective rulings. We add the following comments.

Ordinarily, a plenary hearing is appropriate before the entry of an order affecting the custody of a child. See, e.g., Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005); Fusco v. Fusco, 186 N.J. Super. 321, 327-29 (App. Div. 1982). Where a prior court order exists specifying the terms of residential custody and parenting time, as is the case here, a parent seeking to alter those terms has the burden of demonstrating a material change in circumstances that would justify such alteration. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citing Borys v. Borys, 76 N.J. 103, 115-16 (1978)). If that showing is made, then the Family Part generally should conduct a plenary hearing. See

also R. 5:8-6 (requiring plenary hearings in custody matters where the contested issues are "genuine and substantial").

Lastly, because the manner in which the judge expressed her opinion without allowing plaintiff to present his case at a plenary hearing suggests a predetermination against the plaintiff's position, we are constrained to remand to a different judge to conduct the hearing and decide any pre-hearing motions. The judge shall conduct a case management within twenty days of receipt of this decision: to determine filing dates for motions and opposition; to schedule a reasonable period to complete any outstanding discovery that was uncompleted at the time the December 20 order was entered; and to schedule plenary hearing dates. The judge should be mindful of the passage of time since the order that may have an impact of the parties' respective positions. Primary residential custody of the parties' daughter shall remain with defendant pending the outcome of the plenary hearing.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1872-17T2